United States District Court
Southern District of Texas
**ENTERED**
January 09, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GERALD  MORA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-343 |
| | § | |
| JOSE  CHAPA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This civil rights action was filed by Gerald Mora, a Texas state prisoner, pursuant to 42 U.S.C. § 1983.  Plaintiff is currently incarcerated at the McConnell Unit in Beeville, Texas.  Plaintiff alleges Defendant Jose Chapa was deliberately indifferent to his medical needs in violation of the Eighth Amendment and retaliated against Plaintiff for filing grievances against Defendant Chapa.  Plaintiff also brings claims against Defendant Gary Eubanks[1] for injunctive relief under § 1983 and the Americans with Disabilities Act (ADA).

On August 27, 2016, Defendants filed a Motion for Summary Judgment with Brief in Support.  (D.E. 68).  On December 13, 2016, Plaintiff filed his Response (D.E. 97) to Defendants' Motion for Summary Judgment.[2]  As discussed more fully below, it is

---

[1] Plaintiff originally sued Dr. Susan Morris; however, Mr. Eubanks was later substituted as the appropriate party.  (D.E. 72).

[2] On December 13, 2016, Plaintiff filed a Motion for Leave to Exceed Page Limit.  (D.E. 96). This motion is **GRANTED** and the undersigned considered the full Response (D.E. 97 and D.E. 97-1) filed by Plaintiff.

respectfully recommended that Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's claims be **DISMISSED**.[3]

## I.   JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

Plaintiff is an inmate of the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") and is currently incarcerated at the McConnell Unit in Beeville, Texas.  (D.E. 1, Page 1).  Plaintiff is a throat cancer survivor and has a stoma in his throat to facilitate his breathing.  (D.E. 1, Page 4).  A stoma requires proper care and cleaning in order to avoid infection.  (D.E. 1, Page 4).[4]  Plaintiff alleges, that on four different occasions, March 25, 2012; August 25, 2013; November 11, 2013; and August 24, 2014, he went to the medical department at the McConnell Unit in order to obtain his medical supplies to care for his stoma and was denied the supplies by Defendant Chapa.  (D.E. 1, Page 4 and D.E. 13, Page 2).  Plaintiff explained to Defendant Chapa he needed the supplies because he was having trouble breathing due to excessive saliva and mucus closing his airway.  (D.E. 1, Page 4).

---

[3]  On February 17, 2016, the undersigned entered a Memorandum and Recommendation recommending (1) Plaintiff's claims against Defendant Chapa in his official capacity for monetary damages be dismissed as barred by the Eleventh Amendment; (2) Eighth Amendment and retaliation claims against Defendant Chapa in his individual capacity be retained; (3) claims for § 1983 injunctive relief and relief under ADA be retained and service ordered on Dr. Susan Morris in her official capacity; and (4) appointment of counsel be denied without prejudice. (D.E. 31).  The undersigned respectfully recommends the Court adopt both recommendations, dismiss all of Plaintiff's claims and enter final judgment in favor of Defendants.

[4]  *See* http://www.cancerresearchuk.org/about-cancer/type/larynx-cancer/living/stoma/life-with-a-breathing-stoma

On Sunday March 25, 2012, Plaintiff went to the McConnell Unit medical department to see if he could refill his medical supplies. Defendant Chapa told Plaintiff he needed to put in an I-60 request in order to receive the supplies. (D.E. 1-1, Page 1). Plaintiff explained to Defendant Chapa that Plaintiff receives his supplies every Thursday but that he was out of supplies. (D.E. 1-1, Page 1). Defendant Chapa informed Plaintiff that Plaintiff could not come to the medical department any time he wanted to receive medical supplies. Rather, Plaintiff was instructed he was required to submit an I-60 request. (D.E. 1-1, Page 1). Plaintiff alleges he told Defendant Chapa he could stop breathing and Defendant Chapa responded by saying "we will deal with that when the time comes." (D.E. 1-1, Page 1). Plaintiff alleges Sergeant Boyer positioned two corrections officers on watch every thirty minutes for the rest of the day due to Plaintiff's shallow breathing. (D.E. 1-1, Page 2). It took three days for Plaintiff to receive his medical supplies and during that time he was using the top of a pen to open his stoma. (D.E. 1-1, Page 3). Plaintiff exhausted his administrative remedies as it related to this incident by filing the appropriate grievances with the McConnell Unit. (D.E. 1-1, Pages 1-4).

On August 24, 2013, Plaintiff was scheduled to receive his supplies but he alleges the corrections officer did not let him out of his cell. (D.E. 1-1, Page 5). On August 25, 2013, Plaintiff went to the medical department for medication and he also asked for his medical supplies at that time. (D.E. 1-1, Page 5). Nurse Moreno told him if he did not receive the supplies as scheduled, he could not get them on a walk-in basis and indicated Defendant Chapa was the person making that decision. (D.E. 1-1, Page 5). Plaintiff left

the medical department without receiving any supplies to clean his stoma and Plaintiff claims Defendant Chapa did this in retaliation for Plaintiff having filed a lawsuit against him.  (D.E. 1-1, Page 5).  Plaintiff alleges he suffered an infection on this occasion from using an unsanitary cleaning device which caused distressed breathing.  (D.E. 1-1, Page 7).  Plaintiff submitted a step one and a step two grievance following this incident which were both received and responded to by the McConnell Unit staff.  (D.E. 1-1, Pages 5-8).

On November 11, 2013, Plaintiff went to the medical department to obtain his supplies and was told he was not in the computer as receiving any medical supplies. (D.E. 1-1, Page 9).  The nurse told Plaintiff she was following Defendant Chapa's orders. (D.E. 1-1, Page 9).  Plaintiff was told the order was only good for six months and the department was following policy for non-emergencies.  (D.E. 1-1, Page 9).  Plaintiff again states he was forced to clean his stoma with a pen.  (D.E. 1-1, Page 9).  Plaintiff filed both a step one and a step two grievance relating to this incident which were responded to by the McConnell Unit medical staff.  (D.E. 1-1, Pages 9-12).

On August 15, 2014, Plaintiff filed his original complaint.  (D.E. 1).  On August 24, 2014, Plaintiff was scheduled for a clinic visit and while at his clinic visit, he tried to obtain his medical supplies.  (D.E. 13, Page 2).  Defendant Chapa was the nurse in charge that day and he refused to give medical supplies to Plaintiff.  (D.E. 13, Page 2).  Plaintiff submitted both a step one and step two grievance about the incident and the grievance response indicated Plaintiff did not show up for his clinic visit on August 24, 2014 but received his supplies two days later.  (D.E. 13, Pages 6-9).

On December 18, 2014, Plaintiff filed a Motion for Leave to File an Amended Complaint seeking to add a claim arising from a denial of medical supplies on August 24, 2014 and to add Dr. Susan Morris in her official capacity in order to obtain injunctive relief pertaining to Defendant Chapa's future performance.  (D.E. 13).  On December 22, 2014, the undersigned granted Plaintiff's Motion to Amend and considered the matters set forth in that motion as part of Plaintiff's Complaint.  (D.E. 14).  On March 5, 2015, the undersigned entered a Memorandum and Recommendation recommending the action be dismissed for failure to state a claim and/or as frivolous under § 1915 screening.  (D.E. 18).   On April 1, 2015, Plaintiff filed written objections to the undersigned's memorandum and recommendation.  (D.E. 21).  On December 7, 2015, Senior United States District Judge Hilda Tagle recommitted the case to the undersigned to consider Plaintiff's objections, Plaintiff's evidence in support of his claims, whether the evidence raises a claim under the ADA, and whether Plaintiff should be appointed counsel.  (D.E. 26).  On February 17, 2016, the undersigned entered a Supplemental Memorandum and Recommendation recommending (1) Plaintiff's claims against Defendant Chapa in his official capacity for monetary damages be dismissed as barred by the Eleventh Amendment; (2) Plaintiff's Eighth Amendment and retaliation claims against Defendant Chapa in his individual capacity be retained and service ordered on him; (3) Plaintiff's claims for § 1983 injunctive relief and for relief under the ADA be retained and service ordered on Dr. Susan Morris in her official capacity only; and (4) appointment of counsel be denied without prejudice at this time.  (D.E. 31).

On April 4, 2016, Defendants filed their Original Answer.  (D.E. 39).  On August 8, 2016, Defendant Eubanks filed a motion to substitute parties asserting Dr. Susan Morris is not in Defendant Chapa's chain of command and Defendant Eubanks was the proper defendant for providing injunctive relief.  (D.E. 57).  This motion was granted on September 6, 2016.  (D.E. 72).  On August 27, 2016, Defendants filed their Motion for Summary Judgment.  (D.E. 68).  On December 13, 2016, Plaintiff filed a Response to Defendants' Motion for Summary Judgment.  (D.E. 97).

## III.    LEGAL STANDARDS

### A.    Summary Judgment

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and summary judgment evidence show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with "significant probative evidence" the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

### B.    42 U.S.C. § 1983

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988).  A defendant acts under color

of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303.(1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Furthermore, negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

### C.   Americans with Disabilities Act (ADA)

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Supreme Court has expressly held state prison facilities are included in the definition of public entity.  *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998).

The statute defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [a qualified individual]; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).   Major life activities includes the operation of major bodily functions including respiratory functions.  *Id*. § 12102(2)(B).   Further, physical impairment encompasses "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems" such as the respiratory system including speech organs.  29 C.F.R. § 1630.2(h)(1).

A Plaintiff proceeding under Title II must show (1) he or she is a qualified individual within the meaning of the Act; (2) that he or she is being excluded from participation in, or being denied benefits of, services, programs, or activities; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his or her disability.  *See Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997).

## IV.    DISCUSSION

### A.    Plaintiff's § 1983 Claims

#### 1.    Exhaustion

Defendant argues Plaintiff has not exhausted all of his administrative remedies as to the August 2014 claim.  (D.E. 68, Page 23).  Defendants contend the only grievances properly within the scope of the lawsuit are the August 2013 incident and the November 2013 incident.  (D.E. 68, Pages 23-24).  Defendant states these two occasions of Plaintiff being denied medical supplies are proper claims and all other claims have not been fully exhausted and must be dismissed.  (D.E. 68, Page 24).  Plaintiff directs attention to his amended complaint to show the administrative remedies for the August 2014 incident was fully exhausted.  (D.E. 97, Page 11).  Plaintiff and Defendant present the grievances from all four incidents showing the step one and step two grievances filed and when they were returned by TDCJ staff.[5]  (D.E. 1-1, Pages 1-12 and D.E. 68-2, Pages 3-19).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

---

[5] The administrative remedies for the March 2012 incident were completed on August 9, 2012. (D.E. 1-1, Pages 1-4).  The administrative remedies for the August 2013 incident were exhausted on March 5, 2014.  (D.E. 1-1, Pages 5-8 and D.E. 68-2, Pages 7-9).  The administrative remedies for the November 2013 incident were exhausted on June 11, 2014.  (D.E. 1-1, Pages 9-12 and D.E. 68-2, Pages 10-13).  The administrative remedies for the August 2014 incident were exhausted in October 23, 2014.  (D.E. 13, Pages 6-9 and D.E. 68-2, Pages 16-19).

Exhaustion of administrative claims is mandatory under the PLRA and unexhausted claims cannot be presented to the District Court. *Jones v. Brock*, 549 U.S. 199, 212 (2007). The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001). A prisoner must complete the administrative review process in accordance with all the procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Since exhaustion is an affirmative defense, the burden is on Defendants to demonstrate Plaintiff failed to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Defendants are required to establish "beyond peradventure all of the essential elements of the defense of exhaustion to warrant summary judgment" in their favor. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Prisoners are not required to plead or demonstrate exhaustion in their complaints. *Jones*, 549 U.S. at 215.

TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Johnson v. Johnson*, 385 F.3d 503, 515-16 (5th Cir. 2004). This procedure must be exhausted prior to filing a lawsuit in District Court. *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("After *Woodford and Jones*, there can be no doubt that pre-filing exhaustion of prison grievance processes is mandatory."). "District courts have no discretion to excuse a prisoner's

failure to properly exhaust the prison grievance process before filing their complaint." *Id*. It is irrelevant whether the prisoner exhausted the process during the proceeding because pre-filing exhaustion is mandatory and "the case must be dismissed if available administrative remedies were not exhausted." *Id*.

"An amended complaint will not typically cure the failure to exhaust administrative remedies prior to initially filing suit." *Smith v. Olsen*, 455 F. App'x 513, 515 (5th Cir. 2011) (citing *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998)). However, in *Smith v. Olsen*, the Fifth Circuit allowed the claims added by an amended complaint because the plaintiff intended his amended complaint to raise new claims which were exhausted before he filed his amended complaint. 455 F. App'x at 516 ("It is apparent that Smith intended his second amended complaint to raise new claims, which he had exhausted, and these claims were so unrelated to his original complaint that they ultimately became a separate lawsuit."). While the Fifth Circuit has not explicitly stated new exhausted claims, that had not occurred or had not been exhausted at the time of original complaint, advanced in amended complaints are proper under the PLRA, other circuits have held those claims to be properly exhausted. *See Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010) ("The PLRA's exhaustion requirement is satisfied so long as [plaintiff] exhausted his administrative remedies with respect to the new claims asserted in his [second amended complaint] before he tendered that complaint to the court for filing."); *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (The district court requiring plaintiff to exhaust remedies not yet pertinent to the allegations of the filed complaint "demand[s] that [plaintiff] shoulder an impossible task").

Here, the summary judgment evidence is clear that Plaintiff exhausted his administrative remedies as it relates to the incidents occurring in March 2012, August 2013, and November 2013. *See* D.E.1-1, Pages 1-12. Plaintiff initiated this lawsuit on August 15, 2014 by filing a complaint. (D.E. 1). In his Motion for Leave to File an Amended Complaint filed on December 18, 2014, Plaintiff complains of being denied his medical supplies on August 24, 2014. (D.E. 13, Page 2). Plaintiff did exhaust his administrative remedies for this alleged incident in October of 2014, before the filing of the amended complaint. *See* D.E. 13, Pages 6-9. Therefore, the undersigned finds Plaintiff has exhausted his administrative remedies for the claims arising from incidents in March 2012, August 2013, and November 2013. The undersigned also finds Plaintiff has exhausted his administrative remedies for the claims arising from an incident in August 2014 prior to that claim being pled. *See Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010); *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005). Since the incident added by the Motion for Leave to File an Amended Complaint occurred after the filing of the original complaint, it would have been impossible for Plaintiff to exhaust it prior to filing. Plaintiff properly exhausted the claim prior to bringing it in his Motion for Leave to File an Amended Complaint and accordingly, the undersigned finds Plaintiff's claim from August 2014 is properly exhausted for this case.

The undersigned respectfully recommends Defendants' Motion for Summary Judgment be denied as it relates to the issue of exhaustion.

### 2.    Deliberate indifference to serious medical needs

The undisputed facts establish Plaintiff was not immediately provided with personal medical supplies to clean his stoma upon his request on four occasions.  On three of those occasions, Plaintiff presented himself at the McConnell Unit Medical Department without an appointment or a completed request form (I60) as required by TDCJ policy.  On the other occasion, Plaintiff's scheduled appointment did not appear on the McConnell Unit medical department computer or calendar.  On each of those occasions, Plaintiff was instructed to complete an I-60 form per TDCJ procedure, to receive the medical supplies for cleaning his stoma.  In each of these instances, Plaintiff experienced a period of delay where he was without cleaning supplies while his request was being processed.  The issue for the Court is whether the delay in providing Plaintiff medical supplies to clean his stoma amounted to deliberate indifference to Plaintiff's serious medical needs.

Defendants claim there is no genuine issue of material fact to support Plaintiff's deliberate indifference claim.  (D.E. 68, Page 31).  Defendants first argue that Plaintiff has not suffered a physical injury connected to the denial of his medical supplies.  (D.E. 68, Page 27).  Defendants present Defendant Chapa's affidavit to show Plaintiff was denied his medical supplies on August 25, 2013 because Plaintiff had missed his scheduled pickup.  (D.E. 68-1, Page 3).  Defendant Chapa further informed Plaintiff he needed to fill out an I-60 form in order for a practitioner to fill his request.  (D.E. 68-1, Page 3).  During this incident, Defendant Chapa did not observe nor was told Plaintiff was in any distress or need of urgent care.  (D.E. 68-1, Page 4).  Defendants also provide

the affidavit of Dr. Steven Bowers to show Plaintiff came to pick up his medical supplies on August 30, 2013 and was seen for complaints about phlegm and an examination showed Plaintiff had bronchitis.  (D.E. 68-6, Page 6).  Further, Dr. Bowers averred there are no records indicating Plaintiff requested medical supplies or complained of illness between the time he was denied supplies and the time he received them despite being seen on August 28 and 29 by nursing staff.  (D.E. 68-6, Page 6).  Further, any infections Plaintiff had were resolved quickly and he suffered no adverse effects as a result of infection.  (D.E. 68-6, Pages 6-7).

Defendants again submit Defendant Chapa's affidavit to show on November 11, 2013, Plaintiff was denied his medical supplies because there was not a current order for medical supplies within Plaintiff's records.  (D.E. 68-1, Page 4).  Plaintiff was told to submit a sick call request and an order was entered three days later for Plaintiff to receive medical supplies.  (D.E. 68-1, Page 4).  Defendant Chapa again averred he did not observe Plaintiff in any acute distress or need of urgent care.  (D.E. 68-1, Page 5).  Dr. Bowers averred a reminder was put in the computer for Plaintiff's medical supplies on November 14, 2013 and Plaintiff was seen on November 15, 2013 and denied problems with aspiration.  (D.E. 68-6, Page 7).  Defendants do not specifically address the incidents occurring in March 2012 or August 2014; however, Plaintiff presents the grievance responses for those events.  *See* D.E. 1-1, Pages 2, 4 and D.E. 13, Pages 7, 9.

Plaintiff argues that it is well established he has a life threatening condition and he should have given his supplies regardless of what the computer states.  (D.E. 97-1, Page 4).  Plaintiff argues his condition categorizes his needs as chronic care rather than non-

emergency situations.  (D.E. 97-1, Page 5).  Plaintiff argues Defendants knew of his condition and it was obvious that immediate medical attention was needed to prevent infection.  (D.E. 97-1, Page 6).  Plaintiff asserts there was a standing order of supplies that was issued and the excuse that the supply order not being in the computer was a cover for the withholding of supplies.  (D.E. 97-1, Page 6).

The Eighth Amendment prohibits cruel and unusual punishment.  Prison officials must provide humane condition of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee safety of the inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Conditions that result in "unquestioned and serious deprivations of basic human needs" or "deprive inmates of the minimal civilized measures of life's necessities" violate the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 8-10 (1992).  Such a violation occurs when a prison official is deliberately indifferent to an inmate's health and safety.  *Farmer*, 511 U.S. at 834.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety.  *Id*. at 837.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Id*.

Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Deliberate indifference encompasses more than mere negligence on the part of prison officials.  *Farmer*, 511 U.S. at 835.  It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison

official, perceiving the risk, must deliberately fail to act. *Id*. To establish an Eighth Amendment violation, an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health. *Id*. at 836. Furthermore, negligent medical care does not constitute a valid § 1983 claim. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim."). As long as medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

A mere disagreement with the level and type of treatment is not actionable under the Eighth Amendment. *Estelle*, 429 U.S. at 107. A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

Here, Plaintiff makes the argument Defendant Chapa knew of his medical condition and acted with deliberate indifference in denying Plaintiff access to the medical supplies needed to clean his stoma. Plaintiff frequently attempts to classify his cleaning

supplies as life-saving. However, Plaintiff does not advance any evidence that denying him his cleaning supplies on these isolated instances posed a substantial risk to his future health. Plaintiff does offer evidence to show these cleaning supplies should be kept on hand but the materials are instructions to individuals on how to care for their stomas not requirements that the medical department give them out at any time. *See* D.E. 21-1, Pages 6-8. Plaintiff puts forth statements of an Officer Saenz relating to the incident on March 25, 2012 as evidence he was having difficulty breathing when denied his supplies. (D.E. 21-2, Pages 9-10). The statements contained in the report simply state Officer Saenz escorted him to medical where he was refused his supplies but the only mention of difficulty breathing is the sergeant's comment that Plaintiff told him Officer Saenz was a witness to his difficulty breathing. (D.E. 21-2, Pages 9-10).

Defendants maintain Plaintiff was seen during all the incidents where he was denied medical supplies and Defendant Chapa never observed Plaintiff in any distress or need of urgent care. (D.E. 68-1, Pages 4, 5). Defendants admit Plaintiff suffered from infections but noted the infections were resolved quickly and caused no adverse effects. (D.E. 68-6, Pages 6-7). Defendants submit affidavits relating to the August 2013 incident to show Plaintiff did not complain of illness nor request medical supplies between the time he was denied supplies and the time he received them despite being seen by the nursing staff twice in that time. (D.E. 68-6, Page 6). Relating to the November 2013 incident, Defendants advance the affidavit of Dr. Bowers who avers Plaintiff was denied medical supplies on November 11, 2013, a reminder was put in the computer on November 14, and Plaintiff was seen by staff on November 15 and denied any breathing

problems.  (D.E. 68-1, Page 4 and D.E. 68-6, Page 7).  Additionally, for the two instances Defendants do not directly address because they assert they are not properly exhausted, the grievance responses show Plaintiff was not perceived to be in any distress on those occasions.  (D.E. 1-1, Pages 2, 4 and D.E. 13, Pages 7, 9).

On all occasions where Plaintiff was denied his cleaning supplies he was instructed to submit a sick call request in accordance with TDCJ policy and received supplies a short time later.  (D.E. 68-1, Pages 3, 4 and D.E. 68-6, Page 6).  Plaintiff complains of not getting his supplies on four instances in over two years.  Plaintiff was supposed to be receiving supplies once a week or once every two weeks depending on the order.  The instances where Plaintiff was denied his supplies were isolated and not regular occurrences.  Additionally, Defendants have advanced multiple pieces of evidence to show Plaintiff was not presenting with obvious signs of distress at the time Defendant Chapa denied him medical supplies.  *See* D.E. 68-1, Pages 4-5 and D.E. 68-6, Pages 6-7).  Even when Plaintiff did suffer from infections, Defendants have advanced evidence to show he was treated promptly and suffered no adverse effects.  Accordingly, the undersigned finds there is not a genuine dispute of material fact that Defendants were not deliberately indifferent to Plaintiff's serious medical needs.  Therefore, the undersigned respectfully recommends Defendants' Motion for Summary Judgment be granted as it relates to Plaintiff's claim Defendant Chapa was deliberately indifferent to his serious medical needs.

### 3.      Retaliation

Defendants next move for summary judgment on the basis there are no genuine issues of material fact to support Plaintiff's retaliation claims.   (D.E. 68, Page 41). Defendants assert the denial of Plaintiff's medical supplies was done pursuant to McConnell Unit's sick call request policy not retaliation.    (D.E. 68, Page 43). Defendants present TDCJ sick call policy which states the sick call system is in place to treat routine, non-emergency illness or injury and non-emergency requests are triaged within twenty-four hours of receipt.   (D.E. 68-5, Page 3).   Defendants further claim Defendant Chapa did not have the authority to renew Plaintiff's order when it failed to automatically renew and the subsequent denial of medical supplies was a result of the applicable unit policies.   (D.E. 68, Page 43).   Plaintiff asserts he was denied medical supplies because he filed grievances and a previous lawsuit.   (D.E. 97-1, Page 7). Plaintiff also alleges a disciplinary case was filed against him in retaliation for the filing of grievances.    (D.E. 97-1, Page 7).    Plaintiff alleges Defendant Chapa received instructions to make sure Plaintiff received his supplies even if there was no order in the computer and Plaintiff was still denied his supplies.  (D.E. 97-1, Page 9).  Plaintiff further presents statements by him that various documents were forged by TDCJ personnel to change the responses of various persons concerning the denial of his medical supplies. (D.E. 97-1, Page 11).  Again, Defendants do not expressly address the incidents occurring in March 2012 or August 2014; however, Plaintiff presents the grievance responses for those events which give the reasons McConnell Unit personnel gave for the denials.  *See* D.E. 1-1, Pages 2, 4 and D.E. 13, Pages 7, 9.

Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sinderman*, 408 U.S. 593, 597 (1972). Retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). It is well-settled that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, the Fifth Circuit has emphasized that "[p]risoner's claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (unpublished) (citing *Wood*, 60 F. 3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*. For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. *Id*. at 687.

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Stewart*, 132 F.3d

225, 231 (5th Cir. 1998)).  An inmate must allege more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted).

Here, Plaintiff alleges Defendant Chapa withheld his medical supplies in retaliation for Plaintiff filing grievances and a lawsuit against Defendant Chapa.  (D.E. 97-1, Page 7).  Plaintiff provided numerous grievances filed against Defendant Chapa.  *See* D.E. 1-1, Pages 1-12 and D.E. 13, Pages 6-9.  However, none of the grievances Plaintiff presents precede the initial denial of his medical supplies and the first grievance is based on the first denial of his medical supplies.  Defendants present evidence the denial of Plaintiff's medical supplies was done pursuant to McConnell Unit policy and not for retaliation.  *See* D.E. 68-5, Page 3.  Defendants present evidence Plaintiff was denied medical supplies on August 25, 2013 because Plaintiff missed his scheduled pickup the day before and Plaintiff needed to fill out a sick call request pursuant to policy since he missed his appointment.  (D.E. 68-1, Page 3 and D.E. 68-6, Page 6).  Defendants present evidence Plaintiff was denied his supplies on November 11, 2013 because there was not a current order within his records and nursing staff are unable to provide supplies without an order.  (D.E. 68-1, Page 4 and D.E. 68-6, Page 7).  Plaintiff was again instructed to submit a sick call request pursuant to policy.  (D.E. 68-1, Page 4 and D.E. 68-6, Page 7).  While Defendants do not present evidence concerning incidents occurring in March 2012 or August 2014, Plaintiff presents the grievance responses for those events.  *See* D.E. 1-1, Pages 2, 4 and D.E. 13, Pages 7, 9.  The grievance responses show Plaintiff was denied medical supplies in March 2012 because he was not in any distress

and he was instructed to submit a sick call request.  (D.E. 1-1, Page 4).  The grievance responses also show Plaintiff was denied supplies in August 2014 because Plaintiff missed his appointment, showed up when he was not scheduled to come to medical, and the supplies were distributed when a sick call request was filed.  (D.E. 13, Page 9).  Plaintiff's allegations of retaliation are conclusory and are not supported by the summary judgment evidence.

Accordingly, the undersigned finds no genuine dispute of material fact that Defendants denied Plaintiff his medical supplies on four sporadic and infrequent occurrences due to McConnell Unit and TDCJ policy rather than in retaliation against Plaintiff.  Therefore, the undersigned respectfully recommends Defendants' Motion for Summary Judgment be granted as it relates to Plaintiff's retaliation claims.

### 4.    Qualified immunity

Defendants move for summary judgment on the basis of qualified immunity as it relates to Defendant Chapa's liability.  (D.E. 68, Page 27).  Defendants assert Plaintiff has not suffered any physical injury as a result of the alleged constitutional violation and Plaintiff has not adequately pled his constitutional claims.   (D.E. 68, Pages 27-43).  Defendants also assert Defendant Chapa's actions were objectively reasonable because he was directing Plaintiff to comply with procedures and Plaintiff was not facing a serious medical issue as a result of not obtaining his medical supplies.  (D.E. 68, Page 44).  Plaintiff asserts he has stated an Eighth Amendment violation and he was exposed to a high risk of serious injury.  (D.E. 97-1, Page 2).  Plaintiff further contends Defendant Chapa's actions were not objectively reasonable because there was a standing order in the

computer to issue Plaintiff supplies regardless of anything and Defendant Chapa ignored this order.  (D.E. 97-1, Pages 12-13).

Qualified immunity "shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (alterations in original).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Court should not deny immunity unless "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  The qualified immunity inquiry involves two steps: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id*. at 736 (citing *Harlow*, 457 U.S. at 818). "Courts have discretion to decide which prong of the qualified immunity analysis to address first." *Morgan v. Swanson*, 659 F.3d 359, 371(5th Cir. 2011) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  The threshold question a court must answer in the qualified immunity analysis is "whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).  To discharge this burden, the

plaintiff must satisfy a two-prong test." *Atteberry v. Nocana Gen. Hosp.*, 430 F.3d 245, 251-52 (5th Cir. 2005).  First, the plaintiff must claim that the defendants committed a constitutional violation under current law.  *Id.* (citation omitted).  Second, the plaintiff must claim that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of.  *Id.*

Here, Defendant Chapa denied Plaintiff the immediate distribution of his medical supplies on four occasions pursuant to TDCJ policy.  As discussed in sections IV.A.2-3 above, the undersigned has found the summary judgment evidence does not show that Defendant Chapa committed a constitutional violation.  Further, as discussed in these sections, Defendant Chapa only denied Plaintiff medical supplies based upon TDCJ policy and did not observe Plaintiff to be in any distress during any of the incidents in question.  Accordingly, the undersigned finds Defendant Chapa's actions were objectively reasonable in light of the Eighth Amendment law at the time of each incident. Plaintiff has failed to satisfy his burden to demonstrate the defense of qualified immunity does not apply.  Therefore, the undersigned respectfully recommends Defendant Chapa's Motion for Summary Judgment be granted based on qualified immunity.

### B.      Plaintiff's ADA Claims

Plaintiff alleges TDCJ's repeated denial or delay of medical supplies to clean his stoma amounts to a violation of the Americans with Disabilities Act.  A Plaintiff proceeding under Title II must show (1) he or she is a qualified individual within the meaning of the Act; (2) that he or she is being excluded from participation in, or being denied benefits of, services, programs, or activities; and (3) that such exclusion, denial of

benefits, or discrimination is by reason of his or her disability.  *See Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997).

Defendants argue there is no genuine issue of material fact as to Plaintiff's ADA claims and they should be dismissed.  Defendants put forth Plaintiff's receipt of health services to show Plaintiff was not excluded from accessing medical care.  *See* D.E. 68-6, Pages 3-9.  Further, Defendants argue that Plaintiff's claim for injunctive relief is moot since reminders have been scheduled for delivery of his cleaning supplies through January 9, 2017.  (D.E. 68, Page 49 and D.E. 68-7).  Plaintiff responds by stating he has established a valid claim under the ADA.  (D.E. 97-1, Page 14).

Here, it is apparent Plaintiff would be a qualified individual within the meaning of the act.  Plaintiff had laryngeal surgery and now has a stoma in order to breathe and talk.  The definitions within the ADA and the Code of Federal Regulations include respiratory systems and even extend to speech organs.  *See* 42 U.S.C. § 12102; 29 C.F.R. § 1630.2(h)(1).  Regarding the second element, Plaintiff has not shown he was denied benefits, services, programs, or activities.  Plaintiff has shown the quality of care was not perfect at the McConnell Unit.  However, the quality of the care was not so deficient or pervasive as to give rise to an ADA claim.

Regarding the third element, Plaintiff cannot show he was denied access to medical supplies at the McConnell Unit because of his disability.  Plaintiff makes conclusory statements that he has shown the denial was discrimination by reason of his disability but Plaintiff also admits states Defendant Chapa's motive was retaliation for past grievances.  (D.E. 97-1, Pages 14, 16).  Plaintiff advances only a minute amount of

evidence for his position that the motive was retaliation and advances no evidence to show the alleged discrimination was based on his disability.  Defendants put forth the affidavit of Dr. Bowers to show Plaintiff was never denied access to medical care other than the receipt of supplies on these rare occasions.  (D.E. 68-6, Pages 3-9).  For the instances where Plaintiff did not receive medical supplies, Defendants bring forth affidavits of employees who state the reasons for each denial.  (D.E. 68-1, Pages 3-4 and D.E. 68-6, Pages 6-8).  Further, the grievance responses for all four instances show Plaintiff was denied medical supplies based on the policies of the McConnell Unit medical department.  (D.E. 1-1, Pages 1-12 and D.E. 13, Pages 7, 9).

Accordingly, the undersigned finds no genuine dispute of material fact that Plaintiff was denied for policy reasons and not on the basis of his disability.  Plaintiff has failed to present a prima facie case under the ADA and Defendants should be entitled to summary judgment.  *See Wright v. Texas Dept. of Criminal Justice*, 2013 WL 6578994 (N.D. Tex. Dec. 16, 2013) (granting summary judgment where Plaintiff failed to state a prima facie case under the ADA for prison's failure to ensure plaintiff took his psychotropic medications resulting in plaintiff committing suicide); *Hay v. Thaler*, 470 F. App'x. 411, 418 (5th Cir. 2012) (upholding grant of summary judgment because Plaintiff failed to make a prima facie showing under the ADA when TDCJ refused to provide him with dentures).  Therefore, the undersigned respectfully recommends Defendants' Motion for Summary Judgment be granted as it relates to Plaintiff's claims under the Americans with Disabilities Act.

## V.   RECOMMENDATION

For the reasons stated above, it is respectfully recommended Defendants' Motion

for Summary Judgment (D.E. 68) be **GRANTED** and Plaintiff's claims be **DISMISSED**

ORDERED this 9th day of January, 2017.

Jason B. Libby
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).