Case 2:14-cv-00343 Document 106 Filed in TXSD on 03/30/17 Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
March 30, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GERALD MORA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:14-CV-343 |
| | § | |
| JOSE CHAPA, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Plaintiff Gerald Mora ("Mora"), a Texas state prisoner, filed this civil rights action pursuant to 42 U.S.C. § 1983. Mora is currently incarcerated at the McConnell Unit in Beeville, Texas. Mora is a throat cancer survivor and has a stoma in his throat to facilitate his breathing. Mora alleges that on four different occasions—March 25, 2012, August 25, 2013, November 11, 2013, and August 24, 2014—he went to the medical department at the McConnell Unit in order to obtain his medical supplies to care for his stoma and was denied the supplies by Defendant Jose Chapa ("Chapa"), Nurse Clinician of the McConnell Unit. *See* Compl., D.E. 1, at 6–16. Mora claims that Chapa was deliberately indifferent to his medical needs in violation of the Eighth Amendment and retaliated against Mora for filing grievances against Chapa. Plaintiff also brings claims against Defendant Gary Eubanks, Associate Chief Nursing Officer (*see* D.E. 57 at 1), for injunctive relief under § 1983 and the Americans with Disabilities Act ("ADA"). The Court has before it Mora's Complaint (D.E. 1), Defendants' Motion for Summary Judgment (D.E. 68), Mora's Response to Defendant's Motion for Summary Judgment (D.E. 97), the Memorandum and Recommendations ("M&R") of the Magistrate Judge to whom this case was referred pursuant to 28 U.S.C. § 636(b) (D.E. 98), and Mora's response in opposition to the M&R (D.E. 105).

The Magistrate Judge recommended that Defendants' Motion for Summary Judgment be granted. More specifically, the Magistrate Court determined that Mora had exhausted his administrative remedies for incidents occurring in March 2012, August 2013, and November 2013, and therefore recommended that Defendants' Motion for Summary Judgment on the issue of exhaustion be denied. *See* M&R, D.E. 98 at 9–12. On all of Mora's substantive claims, however, the Magistrate Judge recommended granting Defendants' Motion for Summary Judgment. On the Eighth Amendment claim, the Magistrate Court determined that there is no genuine dispute of material fact as to if Defendants were deliberately indifferent to Mora's serious medical needs. *Id.* at 13–18. On the retaliation claim, the Magistrate Court determined that there is no genuine dispute of material fact that Defendants denied Mora his medical supplies on four sporadic and infrequent occurrences due to McConnell Unit and Texas Department of Criminal Justice ("TDCJ") "sick call" policy[1] rather than in retaliation against Mora. *Id.* at 19–22. On the ADA claim, the Magistrate Court found no genuine dispute of material fact that Mora was denied or delayed medical supplies to clean his stoma for policy reasons, and not on the basis for disability. *Id.* at 24–26. Furthermore, the Magistrate Court found that Mora did not satisfy his burden to overcome the defense of qualified immunity. *Id.* at 22–24.

More files several objections to the M&R. On the Eight Amendment claim, Mora points to language of the Magistrate Judge's February 17, 2016 Supplemental Memorandum and Recommendation on Remanded Claims ("February 17, 2016 Supplemental M&R"). D.E. 105 at 3 (citing D.E. No. 31 at 8–9). In the February 17, 2016 Supplemental M&R, entered at an earlier stage of litigation, the Magistrate Judge found that:

> The additional evidence offered by Plaintiff establishes that he has alleged sufficient facts to state a claim of deliberate indifference to his serious medical needs against Nurse Chapa in his individual capacity,

---

[1] The TDCJ "sick call" policy is in place to treat routine, non-emergency illness or injury and non-emergency requests are triaged within twenty-four hours of receipt. D.E. 68-5 (D.E. 68, Ex. E), page 3; *see also* discussion at page 5, *infra*.

> as well as a claim for retaliation. In addition, his allegations state a cognizable claim under the ADA.

February 17, 2016 Supplemental M&R, D.E. 31 at 8.

This language from the February 17, 2016 Supplemental M&R indicates that the Magistrate Judge found that Mora had *alleged* sufficient facts to state a claim upon which relief can be granted, and thereby was issuing his recommendation regarding the sufficiency of Mora's complaint under the motion to dismiss standard as outlined in Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P 12(b)(6). Under the (12)(b)(6) standard, a court must accept the factual allegations in the complaint as true and construe all facts in favor of the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). However, at the summary judgment phase of litigation, which is the stage at which the Magistrate Judge issued the instant M&R, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In other words, at the summary judgment phase, the court examines the evidence to determine whether a trial is needed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If, based on the available proof, a reasonable jury would be required to find for one party at trial, then there is no need to proceed to trial and the court can enter judgment as a matter of law for that party. *See* Steven S. Gensler, *Rule 56, Summary Judgment, 2 Federal Rules of Civil Procedure, Rules and Commentary* (Feb. 2017). Therefore, any implication by Mora that the February 17, 2016 Supplemental M&R requires that this Court deny Defendants' motion for summary judgment is without legal merit.

Mora also argues that Chapa knew of Mora's serious medical needs and, despite this knowledge, Chapa repeatedly denied Mora his stoma cleaning supplies. Mora argues that clinical notes provided that Mora should be given his supplies regardless of whether or not there is an order in the computer, and that Chapa's actions constituted deliberate indifference to Mora because Mora's condition is life-threatening. Dkt. No. 105 at 3–4. Mora states that his condition is life-threatening

because his stoma must be cleaned and cleared regularly for it to function properly and to avoid infection or death by blockage (suffocation). *Id.* at 4. Mora quotes language from the Magistrate Court from the February 17, 2016 Supplemental M&R:

> As a registered nurse and a nurse that has personally treated Plaintiff, Nurse Chapa knew of Plaintiff's serious medical needs. Despite this knowledge, the evidence establishes that Nurse Chapa repeatedly denied Plaintiff his stoma cleaning supplies, allegedly because an order was missing in the computer. However, as noted by [Physician Assistant Susanna] Corbett on November 12, 2013, Plaintiff should be given his medical supplies regardless of whether or not there is an order to do so in the computer, as it is well established that he has a life threatening condition for which he will need the supplies the rest of his life. (D.E. 21-4, pages 6–7). Plaintiff's detailed medical history makes it unreasonable for a qualified medical provider to avoid responsibility on the excuse that there is "no order in the computer." Plaintiff has stated an Eighth Amendment claim under *Farmer* for purposes of § 1915A screening.

Supplemental M&R, D.E. 31 at 9.

As explained above, this language from the Supplemental M&R—while indicating that Mora has alleged sufficient facts to state a plausible Eighth Amendment claim—is not dispositive of this case on summary judgment. At the summary judgment phase, the Magistrate Court had before it additional summary judgment evidence in order to make a decision as to whether a reasonable jury would be required to find for one party at trial. *See* Fed. R. Civ. P. 56. The Magistrate Court found that the evidence did not establish a violation of the Eighth Amendment. The undersigned agrees, and briefly provides its reasons below.

The Supreme Court has held that the Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97 (1976). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Additionally, delay in treatment may be actionable only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

In the M&R, the Magistrate Court concluded that Mora did not present evidence to meet this standard for an Eighth Amendment claim because he "does not advance any evidence that denying him his cleaning supplies on these isolated instances posed a substantial risk to his future health." M&R, D.E. 98 at 16–17. The Magistrate Court provided extensive detail of its reasons in the M&R. *See id.* at 13–18. Mora argues that Chapa did put Mora's health and safety in great danger and that Chapa was aware of Mora's cancer history and the presence of his stoma. D.E. 105 at 4.

Pursuant to its de novo review of this case, the undersigned briefly highlights some of the evidence in the record. The TDCJ operates a "sick call" system for the treatment of routine, non-emergency illness or injury, as outlined in the Correctional Managed Health Care Policy Manual. *See* D.E. 68-5, page 3. That policy provides:

> Non-emergency requests will be triaged within 24 hours of receipt of the sick call request in the health care services department and the offender seen at sick call by a qualified health professional within the next 24 hours (72 hours on the weekend). When necessary, a referral is made for the offender to see a physician/mid-level practitioner within 7 calendar days of the original complaint.

Correctional Managed Health Care Policy Manual, D.E. 68-5, page 3.

According to Steven Bowers ("Bowers"), M.D., Legal Coordinator for the University of Texas Medical Branch Correctional Managed Care, the prison generally distributed medical supplies weekly at a scheduled time and patients were responsible for coming to the clinic to obtain their supplies as scheduled in accordance with their lay-ins. *See* D.E. 68-6 (D.E. 68, Ex. F) at 6. He testified that the efficiency of the medical department at a unit as large as the McConnell facility

(approximately 2,950 inmates) requires that patients timely arrive for their scheduled lay-ins. *Id.* at 9. Bowers also testified that "[h]ad Mr. Mora faced a serious medical issue as a result of not obtaining his medical supplies, he could have come to the medical department on an emergent basis to be treated." *Id.* at 10.

Mora was supposed to be receiving his supplies once a week or once every two weeks. *See* M&R, D.E. 98, page 18; *see also* Affidavit of Chapa, D.E. 68-1 (D.E. 68, Ex. A), pages 2–3. On August 25, 2013, Mora came to the unit infirmary requesting his weekly medical supplies. Chapa testified through his affidavit that, after a chart review, Chapa noticed that Mora had been scheduled to pick up his stoma supplies on August 24, 2013 at 21:00 but had not shown up. D.E. 68-1 (D.E. 68, Ex. A), page 2. In response, Mora was informed that he would need to submit a sick call request for his non-emergency complaint. *Id.* Mora did not submit a sick call request until August 30, 2013. Mora was then provided medical supplies on August 31, 2013. *Id.* Chapa testifies in his affidavit that at the time that Mora presented to the clinic, he did not observe, nor was he told, that Mora was in acute distress or in need of urgent emergency care. *Id.* He further testifies that if Mora had presented to the clinic in distress, he would have immediately triaged him and spoken with a physician or mid-level practitioner to provide immediate care. *Id.*

Bowers testified in his affidavit that the medical records note that on November 11, 2013, Mora arrived at the medical department requesting to pick up his medical supplies. *See* D.E. 68-6 (D.E. 68, Ex. F) at 7. He was seen by Nurse Crumbliss ("Crumbliss"). Crumbliss noted that Mora did not come the night before when he had a lay-in, and noted that Mora did not have a current order for supplies and that he needed to fill out a sick call to reestablish a specialty supply order. *Id.*; *see also* Correctional Managed Care Clinical Notes, D.E. 68-3 (D.E. 68, Ex. C), page 12 ("Patient here for specialty supplies, did not come in last night when he had a lay-in. Patient does not have a current order for supplies."). On November 12, 2013, Corbett conducted a chart review for medical supply renewal. D.E. 21-4, page 6 (D.E. 21, Ex. 16); D.E. 68-6 (D.E. 68, Ex. F) at 7. The evidence shows that on

November 12, 2013, a Correctional Managed Care Chart Review electronically signed by Corbett indicated, "MLP CR for patient needing supplies and not given supplies as reminder had expired . . . . Please create reminder for his receiving weekly tracheostomy supplies for 6 months. Should the reminders fall off[,] please note the patient's apparent tracheostomy and maintain his weekly[ ] supply needs for 6 months." D.E. 21-4, page 6 (D.E. 21, Ex. 16). Corbett also ordered the following: "Please call patient over today and provide him with his life sustaining supplies. Please let me know if further information is required and schedule patient to see this provider when possible." *Id.* at page 7. That same day, Chapa emailed Corbett to inquire as to what specific supplies should be ordered and at what quantity. D.E. 68-6 (D.E. 68, Ex. F) at 7. On November 14, 2013, Corbett conducted another chart review and issued orders for Mora to receive tracheostomy supplies every two weeks and to build a reminder in the computer to issue the following supplies for one year: 4x4 gauze one loaf, 14 Q-tips, one bottle of saline, one roll of paper tape, five foam pads, and one catheter. *Id.* A Licensed Vocational Nurse issued Mora his ordered medical supplies on November 15, 2013. *Id.*

Additionally, Bowers testified in his affidavit that "RN Chapa had little to no involvement in the delivery of medical supplies to Mr. Mora." D.E. 68-6 (D.E. 68, Ex. F) at 8. Bowers testifies that his review of medical records shows that Mora "did not come to the medical department on his scheduled lay-in days to pick up his ordered medical supplies" and that RN Chapa is "not even mentioned in conjunction with his subsequent request to receive his supplies for these time periods." *Id.* Furthermore, the evidence shows that the delays of medical supplies for Mora's stoma did not constitute "deliberate indifference" to Mora's condition because Mora presented himself without signs of distress or in need of urgent emergency care. In light of this evidence, as well as that described in the M&R, the Court finds that there is no genuine issue of material fact as to whether Chapa "disregard[ed] an excessive risk to inmate health or safety." *See Farmer* at 837.

Mora also objects by pointing to official statements by Officer Saenz ("Saenz"). D.E. 105 at 5; *see also* D.E. 21-2 (D.E. 21, Ex. 8) at 9–10). Mora argues that in that statement, Saenz stated that Chapa denied Mora's stoma cleaning supplies and that Mora was having difficulty breathing at that time. *Id.* The evidence in the record is an Official Statement by Saenz, which states:

> I do recall the incident of 7-29-12 and did in fact escort offender Mora to medical for supplies. Nurse Chapa did refuse medical treatment to offender Mora in that he would not give supplies to clean out his breathing fixture.

Official Statement of Officer Saenz, D.E. 21-2 (D.E. 21, Ex. 8) at 9. This statement does not provide, as Mora contends in his objections, that Saenz indicated that Mora was having difficulty breathing at the time.

Mora also points to Correctional Managed Care Clinic Notes of August 30, 2013. *See* D.E. 105 at 5 (citing D.E. 21, Ex. 12). The clinic notes state:

> Patient here for evaluation of green sputum and cough with productive phlegm. . . . Patient here for stoma supplies has been having problems with obtaining supplies. . . . Alert NAD scattered crackle to lower lobes with green phlegm production. . . . Follow up as needed or sooner if not better, please issue the following stoma supplies: 4x4 1 loaf, 14 Q Tips, 1 pt bottle of NS, 1 roll paper tape, foam pads 5, 1 catheter.

Correctional Managed Care Clinic Notes, D.E. 21, Ex. 12. Mora argues that these clinic notes demonstrate that Mora faced an emergency situation because the "emergency walk-in was needed due to plaintiff's chest pain and [b]lood coming out from his [s]toma when plaintiff coughed." D.E. 105, page 5. However, the clinic notes do not state that Mora was suffering from chest pain or blood coming out of his stoma. This evidence is insufficient to create a genuine dispute of material fact as to the Defendants' deliberate indifference to Mora's serious medical needs.

The rest of Mora's objections point to other pieces of evidence in the docket. Upon independent review, this Court finds that Mora's additional arguments do not alter the Magistrate Court's analysis regarding Mora's Eighth Amendment claim because they do not present a genuine issue of material fact that prison officials

"kn[ew] of and disregard[ed] an excessive risk to inmate health or safety" within the meaning of *Farmer*.

Mora also raises objections to the M&R recommendation to grant Defendants' Motion for Summary Judgment on the issue of retaliation. Mora asserts he was denied medical supplies because he filed grievances and a previous lawsuit against Chapa. D.E. 105, page 11. Mora reiterates arguments presented to the Magistrate Judge. (For example, Mora reiterates his argument that Chapa has continued to deny Mora his medical supplies, even after receiving instructions to make sure that Mora receives his medical supplies regardless of whether there is an order in the computer). *See* D.E. 105 at 12; *see also* M&R, D.E. 98 at 19 (addressing this argument). As the Magistrate Judge found, Defendants presented evidence that Mora was denied medical supplies because he missed his scheduled pick-up the day before and, therefore, Plaintiff needed to fill out a sick call request pursuant to policy. M&R, D.E. 98 at 21; *see also* discussion, *supra*, pages 5–6.

Mora also presents legal arguments to object to the Magistrate Judge's findings on Defendant's qualified immunity defense and on Mora's ADA claim. This Court, however, finds that these legal arguments were adequately addressed by the M&R, and need not be reiterated herein. *See* M&R, D.E. 98 at 22–26.

After independently reviewing the record and considering the applicable law, the Court adopts the Magistrate Judge's proposed findings and recommendations (D.E. 98) and **GRANTS** Defendants' Motion for Summary Judgment (D.E. 68). The Clerk shall close this case after entering the accompanying judgment.

It is so **ORDERED**.

SIGNED this 30th day of March, 2017.

_____
Hilda Tagle
Senior United States District Judge